UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| TANYQUA LATRICE OLIVER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 20-215-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| LEXINGTON FAYETTE URBAN | ) | **MEMORANDUM OPINION** |
| COUNTY GOVERNMENT, et al., | ) | **AND ORDER** |
| | ) | |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Tanyqua Latrice Oliver is a resident of Cincinnati, Ohio.   Proceeding without an attorney, Oliver has filed a civil complaint pursuant to 42 U.S.C. § 1983 [Record No. 2] and a motion for leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915.   [Record No. 1] The financial information contained in Oliver's fee motion indicates that she lacks sufficient assets or income to pay the $350.00 filing fee.   Therefore, the Court will grant her motion to proceed *in forma pauperis*.

Oliver has also filed a "motion to seal plaintiff's address" [Record No. 3], requesting that the Court seal her current residential address "from all public documents as well as maintain it in a sealed manner not accessible to anyone outside the courts."   [*Id*.]   Regarding this request, the Court notes that the United States Court of Appeals for the Sixth Circuit has made abundantly clear that there is a "strong presumption in favor of openness as to court records."   *Shane Group, Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299, 305 (6th Cir. 2016) (quotation marks and citation omitted).   *See also* LR 5.6(a) ("Parties and counsel

-1-

should presume that all documents filed in district court should be available for the public to access…").   However, Oliver states that she is a crime victim with an active protective order.[1] It is true that Oliver is proceeding in this case without counsel and, as such, she is required to provide contact information both to the Court and to the other parties involved in the case.  *See* LR 5.3(d) (requiring disclosure of contact information for all *pro se* non-prisoner litigants). But because Oliver has provided an alternative address at which she may be contacted, the Court will grant Oliver's motion.   Thus, the Court will direct that the Clerk maintain Record No. 6 [that is, the document submitted with Oliver's motion to seal] under seal.  The Court will further direct the Clerk to redact Oliver's current residential address from the online docket.

## I.

This matter is pending for initial screening as required by 28 U.S.C. §§ 1915(e)(2).  A district court must dismiss any claim that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  *McGore v. Wrigglesworth*, 114 F.3d 601, 607-08 (6th Cir. 1997), abrogated on other grounds, *Jones v. Bock*, 549 U.S. 199 (2007).  A complaint must set forth claims in a clear and concise manner, and must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Hill v. Lappin*, 630 F.3d 468, 470 (6th Cir. 2010).  *See also* Fed. R. Civ. P. 8.  "[T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more

---

[1]  Although the Court will give Oliver the benefit of the doubt, the document that she references in support of this claim is not a protective order but, instead, a signed Lease Agreement. [Record No. 6]

than an unadorned the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (internal quotation marks and citation omitted).

The Court evaluates Oliver's complaint under a more lenient standard because she is not represented by counsel. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003). At this stage, the Court accepts the plaintiff's factual allegations as true, and her legal claims are liberally construed in her favor. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). However, while the Court construes *pro se* pleadings with some leniency, "liberal construction does not require a court to conjure allegations on a litigant's behalf." *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004) (quoting *Erwin v. Edwards*, 22 F. App'x 579, 580 (6th Cir. 2001)).

While Oliver's complaint is difficult to follow, the crux of her claims relate to the handling of complaints that she filed with the Lexington-Fayette Urban County Government ("LFUCG") Ethics Commission against LFUCG Police Officer Timothy Ball, LFUCG Chief of Police Lawrence Weathers, LFCUG Police Lt. Chris Van Brackel, Lt. Tommy Perkins and Fayette County Commonwealth Attorney Lou Anna Red Corn. [Record No. 1 at p. 6] Oliver alleges that, although she came forward as the victim of physical and sexual abuse when she was 14 years old, the LFUCG Police Department did not adequately investigate her claims and, ultimately, declined to prosecute her case. [*Id*. at p. 9-10] Unsatisfied with this outcome, Oliver filed two complaints with the LFUCG Ethics Commission: one against Officer Ball and one against Chief Weathers, Lt. Van Brackel, Lt. Perkins and Red Corn. [*Id*. at p. 6]

The LFUCG Ethics Commission is tasked with enforcing the requirements of the LFUCG's Code of Ethics with respect to all officers and employees of the LFUCG. *See*

-3-

*generally* Section 25-3 of the Lexington-Fayette Urban County Government Ethics Act, Ord. No. 255-94 (Dec. 13, 1994) (available at https://library.municode.com/ky/lexington-fayette_county/codes/code_of_ordinances).  Any person may submit a complaint alleging a violation of the LFUCG Code of Ethics.  *Id*. at Section 25-23(1).  Within 30 days of receipt of a complaint, the Ethics Commission is to conduct a "preliminary inquiry" concerning the allegations contained in the complaint.  *Id*. at Section 25-23(2).  The LFUCG Ethics Act specifically provides that "[a]ll proceedings and records relating to a preliminary inquiry being conducted by the ethics commission *shall be confidential* until a final determination is made by the commission," except that the Commission may turn over evidence to be used in criminal proceedings and the Commission may publicly confirm the existence of the inquiry.  *Id*. at Section 25-23(3).

At the preliminary inquiry stage, the officer or employee who is the subject of the complaint must be afforded an opportunity to respond to its allegations and has the right to be represented by counsel, to appear and be heard under oath, and to offer evidence in response to the allegations.  *Id*. at Section 25-23(2).  However, there is no corresponding provision affording these same rights to the complainant at this stage.  The Commission then makes a determination based on its preliminary inquiry "whether the complaint is within its jurisdiction and, if so, whether it alleges a minimal factual basis to constitute a violation of this chapter." *Id*. at Section 25-23(4).

If the Commission concludes that the complaint is outside of its jurisdiction, frivolous or without factual basis, the inquiry is immediately terminated and a written conclusion of its findings transmitted to the complainant and the subject(s) of the complaint.  *Id*.  Complaints

-4-

against classified civil service employees and members of the division of police are statutorily outside of the Commission's jurisdiction, although the Commission may choose to file charges against a covered employee after the preliminary inquiry. *Id.* On the other hand, if the Commission concludes that "the complaint is within its jurisdiction and contains allegations sufficient to establish a minimal factual basis to constitute a violation," the Commission notifies the subject of the complaint and schedules a hearing to determine whether there has been a violation. *Id.* at Section 25-23(4), 25-24. At the hearing stage, while the Kentucky Rules of Civil Procedure and Kentucky Rules of Evidence do not apply, the hearing is conducted "in accordance with any rules and regulations adopted by the commission so as to afford all parties the full range of due process rights required by the nature of the proceedings." *Id.* at Section 25-25(1). However, to be clear, this hearing is separate and apart from the preliminary inquiry.

Oliver's complaints were received by the Commission on June 6, 2019. [Record No. 2 at p. 6] Oliver alleges that her complaints were originally "scheduled to be heard" at a meeting held on June 24, 2019, but the meeting was rescheduled twice: first for July 12, 2019, then again for August 6, 2019. Oliver claims that this delay violated her due process rights.

In addition, while Oliver suggests at times that her complaints were scheduled for a "hearing" on August 6, 2019, her later allegations make clear that the matter was scheduled for the preliminary inquiry on this date. [*See id.* at p. 10-11 (alleging that Oliver confirmed that the closed portion of the August 6, 2019 meeting was to conduct a preliminary inquiry).] Oliver states that she had invited "an advocate, personal friends of mine and the press to be present and provide emotional support" to her during the August 6 meeting due to her status

as a crime victim.  [*Id*. at p. 7]  She also states that she attempted to "broadcast the meeting per 18 U.S.C. § 2511(2)(g)(i) before [she] was coerced to stop recording despite 18 U.S.C. 2511(2)(d) through verbal threats to end the hearing if [she] didn't by members of the *Ethics Commission*."  [*Id*. (emphasis in original)]  Oliver alleges that, although she was told that she could not record in a closed session, she believed that the closed session was illegal.  Oliver further claims that, even if the LFUCG could legally conduct a closed session, she should still be allowed to record any communications that she is a part of and transmit them to public media outlets.  [*Id*. at p. 7-8]

Oliver further alleges that, at the point of the meeting where her complaints were to be heard, Ethics Commission Chair Shannon Singleton directed everyone that was not involved or an attorney to leave. [*Id*. at p. 8] Oliver asserts that this action violated KRS § 421.575, which permits a victim advocate to accompany a victim during a court proceeding to provide moral and emotional support.  *See* KRS § 421.575.  Oliver alleges that Singleton cited KRS § 61.810(1)(f), a statute which exempts "[d]iscussion or hearings which might lead to the appointment, discipline, or dismissal of an individual employee, member, or student without restricting that employee's, member's, or student's right to a public hearing if requested" from the requirements of the Kentucky Open Meetings Act, as grounds for closing the meeting. However, Oliver claims that, because she is a crime victim, she is regarded as emotionally disabled, thus Singleton's actions violated 42 U.S.C. § 12182, which prohibits discrimination against individuals on the basis of disability.

Oliver states that, although she became so upset that she had to leave the room, [*id*. at p. 9] before she left, she confirmed that the closed portion of the meeting "was a matter of

-6-

determining the merits of my complaints, if it was within the statute of limitations and the applicability of their jurisdiction to even handle my complaint which was verbalized by the chair, *Shannon Singleton*, per recorded conversations as well." [*Id*. at p. 10-11]

Oliver contends that none of these determinations "would affect anyone's employment in addition to the fact that a citizen shouldn't even be included in that particular type or portion of that discussion." [*Id*.] Thus, Oliver theorizes that, because Singleton and another member of the Commission confirmed that the meeting was being "closed" for the purposes of conducting the preliminary inquiry, and not for a specific hearing resulting in a "final determination," it did not come within the exception provided by KRS 61.810(1)(f). [*Id*. at p. 11] Thus, she claims that "[t]his event was a conspiracy and successful effort to deprive me of benefits of service, accommodations as a perceived disabled person and my inalienable rights as a natural born citizen of this country." [*Id*. at p. 12] It is not entirely clear, but it appears that the services and accommodations that she is referring to is a right to the presence of a victim's advocate and/or the members of her emotional support group that she claims is required due to her disabled status as a crime victim.

Oliver further alleges that an open meetings complaint was sent to the Kentucky Office of the Attorney General. [*Id*. at p. 12] And she claims that, although her complaint was received on September 23, 2019,[2] a decision was not rendered on her complaint until October 8, 2019, which she claims is in violation of KRS 61.846(2)'s requirement that a decision to be mailed within 10 days, which, in turn, violates her due process rights. [*Id*]. While Oliver also

---

[2]   Oliver's complaint actually alleges that her open meetings complaint was received on September 23, 2020, which is an apparent clerical error. [Record No. 2 at p. 12]

alleges that the Kentucky Office of the Attorney General denied her the benefits of services on October 8, 2019, because "they never accommodated me upon written request via email communications or telecommunications with their victims advocacy department *as a person perceived to have a disability* like they are required per federal law," which she claims is a violation of the ADA [*id.* at p. 5], she fails to specify the services that she claims she was denied, nor does she explain the nature of her request lodged with the victim's advocacy department or the accommodations that she was not provided.

Oliver filed her complaint in this Court against the LFUCG in its official capacity, the individual members of the LFUCG Ethics Commission in both their individual and official capacities, and the Kentucky Attorney General in its official capacity.  As relief, she seeks $250,000.00 in damages for intentional emotional distress, $100,000.00 in damages for "unlawful threats, coercion, unlawful interference and deprivations of rights/privileges/immunities," injunctive relief in the form of a public apology from the LFUCG and a rescheduling of the "illegal conducted" preliminary inquiry on August 6, 2019, and recovery of "filing, attorney and expert fees."  [*Id.* at p. 18]

## II.

The Court has reviewed the complaint and concludes that it must be dismissed for failure to state a claim.  Oliver seeks to pursue her claims in this Court pursuant to 42 U.S.C. § 1983.  To prevail on a § 1983 claim, Oliver must prove that she was "(1) deprived of a right protected by the Constitution or laws of the United States (2) by a person acting under color of state law."  *Helms v. Zubaty*, 495 F.3d 252, 255 (6th Cir. 2007) (citations omitted).

-8-

While Oliver alleges violations of a variety of federal and state statutes, her claims may be grouped together as follows: 1) claims related to the denial of her right to "broadcast" the proceedings (violations of 18 U.S.C. § 2511(d) and (2)(g)(i) and KRS 61.840); 2) First Amendment Claims (freedom of the press, freedom to petition, and freedom of speech); 3) Fourteenth Amendment Due Process arising from her claims that the Ethics Commission delayed her hearing and that the Kentucky Attorney General did not timely respond to her Open Meetings Complaint;  4) violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq*., including discrimination and violations of equal protection based on her disability; and 5) conspiracy to deny her civil rights by denying her right to a victim's advocate pursuant to KRS 421.575 .  [Record No. 2 at p. 2-3]

A.  Right to Broadcast Proceedings

Oliver first seeks to pursue claims related to the LFUCG Ethics Commission's denial of her perceived right to record the proceedings on August 6, 2019 and to "broadcast" the meeting.  She asserts that this violates 18 U.S.C. § 2511(2)(d) and (2)(g)(1).  However, 18 U.S.C. § 2511 is a criminal statute prohibiting the interception and disclosure of wire, oral, or electronic communications.  *See* 18 U.S.C. § 2511.  A private citizen lacks a judicially cognizable interest in the criminal prosecution of another, *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973), and thus cannot assert a claim arising under a criminal statute.  *Chrysler Corp. v. Brown*, 441 U.S. 281, 316 (1979) ("This Court has rarely implied a private right of action under a criminal statute, and where it has done so 'there was at least a statutory basis for inferring that a civil cause of action of some sort lay in favor of someone.'").  Thus, Oliver lacks standing to assert a violation of 18 U.S.C. § 2511.  Even if 18 U.S.C. § 2511 could

possibly be construed to give rise to a private cause of action to a person whose communications had been illegally intercepted, nothing in this criminal statute gives rise to some sort of civil right to record or intercept communications.

To the extent that Oliver claims a violation of KRS 61.840, while this statute requires public agencies to permit "news media coverage" of public meetings, *see* KRS 61.840, she does not allege that she is a member of the news media.  Nor does KRS 61.840 require a public agency to permit even news media to record confidential proceedings or closed sessions of the agency.  For these reasons, Oliver fails to state a claim for which relief may be granted related to her attempts to "broadcast" the meeting.

   B. <u>First Amendment Claims</u>

While Oliver references the First Amendment's guarantees of "freedom of the press, freedom to petition, and freedom of speech" in the "statutory authority" section of her complaint, she makes no effort to articulate why she believes any of these freedoms were infringed.  The Court's obligation to liberally construe *pro se* pleadings does not extend so far as to require it to conjure unpled facts or create claims for the plaintiff.  *Moorman v. Herrington*, No. 4:08-cv-P127-M, 2009 WL 2020669, at *1 (W.D. Ky. July 9, 2009) (citations omitted).  Thus, the failure to allege facts supporting her First Amendment claims is sufficient to dismiss these claims for failure to state a claim.

Construing her allegations broadly, Oliver appears to be claiming that the Ethics Commission somehow denied her the right to petition the government without interference by denying her the right to broadcast the proceedings and excluding her emotional support team from the preliminary inquiry.  [Record No. 1 at p. 5]  However, to the extent that Oliver appears

to suggest that the Ethics Commission's actions to exclude members of the public from the preliminary inquiry was improper, while hearings of the Ethics Commission are public (unless the members vote to go into executive session in accordance with KRS 61.810, *see* Ord. No. 255-94, § 1, 12-13-94; Ord. No. 73-99, § 2, 3-25-99; Ord. No. 140-2017, § 8, 9-28-17), preliminary inquiries are confidential. Thus, contrary to Oliver's apparent belief, there is no right of public access to these inquiries, nor is there a general right for her to broadcast them. Indeed, the proceedings set forth in the applicable ordinance do not contemplate involvement or attendance by the party who filed the complaint at all. Thus, the exclusion of members of the public, including those who attended to lend Oliver emotion support, from the preliminary inquiry did not violate the applicable procedures, nor did it infringe upon her First Amendment rights.

While Singleton may have also indicated that the meeting was excepted from the provisions of the Open Meetings Act because it involved a personnel issue, this does not present a federal claim, nor does it suggest any bias on his part. To the extent that Oliver alleges that the closed session of the Ethics Commission violates the Kentucky Open Meetings Act, this is a state law claim. And KRS 61.848(1) specifically provides that jurisdiction to enforce the provisions of the Kentucky Open Meetings Act lies with "[t]he Circuit Court of the county where the public agency has its principal place of business or where the alleged violation occurred." KRS 61.848. As these events occurred in Fayette County, and as the principal place of business of the LFUCG Ethics Commission is in Fayette County, jurisdiction belongs to the Fayette Circuit Court, not this Court.

For these reasons, Oliver fails to state a viable First Amendment claim.

-11-

C.  Due Process Claims

Likewise, Oliver's allegations do not state a Due Process claim under the Fourteenth Amendment.  The Fourteenth Amendment prohibits "any State" from depriving "any person of life, liberty, or property, without due process of law."  U.S. Const. Amend. XIV, § 1.  "To establish a claim of procedural due process, a plaintiff must show that (1) he or she had a life, liberty, or property interest protected by the Due Process Clause; (2) he or she was deprived of this protected interest; and (3) the state did not afford adequate procedural rights."  *Schmitt v. LaRose*, 933 F.3d 628, 642 (6th Cir. 2019), *cert. denied*, No. 19-974, 2020 WL 2621728 (U.S. May 26, 2020) (citation omitted).

Here, Oliver does not identify any constitutionally-protected property interest at issue, nor do her allegations suggest one.  At most, she claims that the Ethics Commission's decision to reschedule the preliminary inquiry into the allegations of her complaints violated her due process rights. [Record No. 2 at p. 6]  Similarly, she alleges that the Attorney General's rendering of a decision on her open meetings complaint outside the 10-day period required by KRS 61.846(2) violated her due process rights.  [*Id*. at p. 12]  Thus, Oliver appears to contend that her due process rights were violated merely because she believes that state officers did not strictly adhere to the statutory procedures for processing her ethics and open meetings complaints.  However, it is a "long-established principle 'that the violation of a state statute or regulation is insufficient alone to make a claim cognizable under § 1983.'"  *West v. Kentucky Horse Racing Comm'n*, 425 F. Supp. 3d 793, 809 (E.D. Ky. 2019) (quoting *Stanley v. Vining*, 602 F.3d 767, 769 (6th Cir. 2010)).  *See also Roberts v. Girder*, 237 F. Supp. 3d 548, 555 (E.D.

Ky. 2017) ("the violation of a local ordinance is not enough to establish a due process violation").

D. <u>ADA/Discrimination Claims</u>

Oliver repeatedly alleges throughout her complaint that the Ethics Commission discriminated against her because she is perceived to have a disability in light of her status as a crime victim.[3] Thus, she claims various violations of the Americans with Disabilities Act, including 42 U.S.C. §§ 12203(b) and 12132. Specifically, she appears to allege that the Ethics Commission denied her the right to a victim's advocate and/or the presence of an emotional support group, which she claims entitlement to in light of her status as a crime victim, which she theorizes is "regarded as" being disabled.

The ADA generally prohibits public entities from discriminating against individuals with disabilities, including by failing to make reasonable modifications in policies, practices, or procedures when necessary to afford such services or accommodations to individuals with disabilities. 42 U.S.C. § 12101 *et seq.* 42 U.S.C. § 12132 provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *See* 42 U.S.C. § 12132. In addition, 42 U.S.C. § 12203(b)

---

[3] At one point, Oliver also states that she was discriminated against by the LFUCG with respect to the pursuit, arrest, and prosecution of the individual that she claims sexually abused her and suggests that her membership in a "non-popular religious group," as well as the fact that she's "African-American and beautiful," played a role. [Record No. 2 at p. 5] However, she indicates that this was the basis for the ethics complaints the she filed with the LFUCG Ethics Commission against the LFUCG police officers and the Commonwealth Attorney. [*Id.*] At no point does she allege that the Ethics Commission discriminated against her on the basis of race, religion, or appearance.

proscribes threats, intimidation, or interference directed towards another for his or her exercise of rights under the ADA.

To establish a prima facie case of intentional discrimination under the ADA, a plaintiff must show that: "(1) she has a disability; (2) she is otherwise qualified; and (3) she was being excluded from participation in, denied the benefits of, or subjected to discrimination under the program because of her disability." *Anderson v. City of Blue Ash*, 798 F.3d 338, 357 (6th Cir. 2015). "In other words, the plaintiff must show that the defendant took action because of the plaintiff's disability, i.e., the plaintiff must present evidence that animus against the protected group was a significant factor in the position taken by the municipal decision-makers themselves or by those to whom the decision-makers were knowingly responsive." *Id.* (citations omitted).

As an initial matter, Oliver has not properly alleged that she has a "disability" as it is defined by the ADA. For purposes of the ADA, the term "disability" means, "with respect to an individual—(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment..." 42 U.S.C. § 12102(1). Oliver claims that she is "regarded as" being disabled because she is a crime victim. However, Section 12102(3)(A) explains that "[a]n individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102. Oliver seems to be interpreting this provision as affording the protections of the

-14-

ADA to any individual who regards himself or herself as disabled, which Oliver claims that she does because she is a crime victim. To the contrary, the "regarded as having an impairment" language prohibits discrimination against someone whom the defendant perceives to have a disability, whether or not that belief turns out to be accurate. There are simply no allegations suggesting that any of the defendants regarded Oliver has being disabled, nor that they subjected Oliver to any action prohibited by the ADA based upon this perception.

Nor does Oliver adequately allege that she was "denied the benefits of services" because of her disability. She appears to base her claim on her theory that the exclusion of her "emotional support" team from the preliminary inquiry into her Ethics Complaint violated KRS 421.575, which provides that, "[i]n all court proceedings, a victim advocate, upon the request of the victim, shall be allowed to accompany the victim during the proceeding to provide moral and emotional support." KRS 421.575. First, by its terms, this statute applies only to court proceedings, not confidential sessions of local commissions. Next, the statute refers to a single victim advocate, not the "advocate, personal friends…, and the press" that Oliver claims she required for emotional support. [Record No. 2 at p. 4] Finally, as Oliver herself concedes, during the preliminary inquiry stage, at which the Commission determines whether an ethics complaint is within the statute of limitations or is within its jurisdiction, "a citizen shouldn't even be included in that particular type or portion of that discussion." [Record No. 2 at p. 10-11] Thus, Oliver's own allegations establish that she was not denied any services because of her "disability," her race, or on any other improper grounds, but that she and those in attendance to support her had no role to play at the preliminary inquiry stage, a confidential proceeding.

Glaringly absent from Oliver allegations are any facts even suggesting that defendants' conduct was motivated by her "perceived disability."   While Oliver alleges that she was a victim of a crime, she alleges no facts connecting defendants' treatment of her with her status as a crime victim.  Vague allegations that one or more of the defendants acted wrongfully or violated the plaintiff's constitutional rights are not sufficient to state a claim for relief.  *Laster v. Pramstaller*, No. 08-CV-10898, 2008 WL 1901250, at *2 (E.D. Mich. April 25, 2008).  *See also* Fed. R. Civ. P. 8(a)(2); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned the-defendant-unlawfully-harmed-me accusation.") (internal quotations marks and citation omitted).  Thus, absent allegations of fact to support Oliver's conclusion that she was treated differently because of her disability, she fails to state a claim for violations of the ADA. *Grinter v. Knight*, 532 F. 3d 567, 577 (6th Cir. 2008) (affirming dismissal of inmate's claim of racial discrimination because "plead[ing] a legal conclusion without surrounding facts to support the conclusion…fails to state a claim.").  *See also Elliott v. Plaza Properties, Inc.*, No. 2:08CV1037, 2010 WL 2541020, at *7 (S.D. Ohio June 18, 2010) ("…conclusions [of racial discrimination] without any factual support are now insufficient to satisfy the pleading standards of the Federal Rules of Civil Procedure, as explained in [*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)] and *Iqbal*.").

Similarly, to the extent that Oliver claims she was denied equal protection of the law, she fails to allege that she was treated differently from any other similarly-situated individual because of her "perceived disability."   The Equal Protection Claus of the Fourteenth Amendment is "essentially a direction that all persons similarly situated should be treated

-16-

alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439, (1985).  Thus, "[a] plaintiff may state a claim for an equal protection violation by alleging 'discrimination by government which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently from others similarly situated without any rational basis for the difference.'"  *Flinchum v. City of Beattyville*, 224 F. Supp. 3d 536, 542 (E.D. Ky. 2016) (quoting *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681–82 (6th Cir. 2011)).

Oliver does not allege that the defendants treated her any differently than other similarly-situated individuals.  Indeed, her ethics complaint and her open meetings complaint were processed in accordance with the applicable ordinances and statutes.  Thus, her complaint thus fails to state an equal protection claim.  *Aldridge v. City of Memphis*, 404 F. App'x 29, 42 (6th Cir. 2010) ("To satisfy [the Equal Protection Clause's] threshold inquiry, [plaintiffs] must allege that [they] and other individuals who were treated differently were similarly situated in all material respects.").

E.  Conspiracy Claims

Finally, Oliver's claim also fails to the extent that she seeks to pursue her claims pursuant to 42 U.S.C. § 1985, which gives rise to a claim for conspiracy to deter witnesses' participation in state or judicial proceedings or conspiracy to interfere with a person's civil rights.  To state a claim for relief under § 1985(3), "a plaintiff must allege: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges or immunities of the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States."  *Vakilian v. Shaw,* 335

-17-

F.3d 509, 518–19 (6th Cir.2003).  In addition, "the Supreme Court requires that § 1985 claims contain allegations of 'class-based invidiously discriminatory animus." *Webb v. United States*, 789 F.3d 647, 672 (6th Cir. 2015) (citing *Griffin v. Breckenridge*, 402 U.S. 88, 102 (1971)). Oliver's bare allegations that she is a crime victim (which she regards as being disabled), without any further allegations suggesting that defendants actions towards her were motivated in any way by her status, do not meet this standard.

Nor does Oliver adequately allege the existence of a civil conspiracy, which requires a plaintiff to allege "[1] that there was a single plan, [2] that the alleged coconspirator shared in the general conspiratorial objective, and [3] that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant." *Harcz v. Boucher*, 763 F. App'x 536, 540 (6th Cir. 2019) (citations omitted).  The pleading requirements for civil conspiracies are "relatively strict" and require more than conclusory allegations. *Id*. at 540-541 (citing *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 563–64 (6th Cir. 2011); *Moldowan v. City of Warren*, 578 F.3d 351, 395 (6th Cir. 2009).  Thus, Oliver's mere conclusory allegation that there was a conspiracy to deny her equal protection of the laws – with no further allegations regarding the "single plan," the members of the conspiracy, the conspiratorial objective, nor any overt act committed in furtherance of the conspiracy – is insufficient to allege the existence of a civil conspiracy.

For these reasons, the Court finds that Oliver fails to state a claim for which relief may be granted with respect to her federal law claims.  To the extent that Oliver alleges various violations of state law, including the Kentucky Open Meetings Act, the Court has no independent basis for jurisdiction over the state claims, *see* 28 U.S.C. § 1367(c)(3), and the

balance of judicial economy, fairness, and comity all point toward declining supplemental jurisdiction, which the Court will do. *See Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996) ("When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed.") (citations omitted). Thus, Oliver's complaint will be dismissed without prejudice to Oliver's right to raise her state law claims alleging violations of Kentucky Open Meetings Act in state court. Accordingly, it is hereby

**ORDERED** as follows:

1.    Oliver's motion to proceed in forma pauperis [Record No. 1] is **GRANTED** and payment of the filing and administrative fees is **WAIVED**.

2.    Oliver's motion to seal her current residential address [Record No. 3] is **GRANTED**. The Clerk of the Court shall redact Oliver's current residential address from the Court's online docket and shall maintain Record No. 6 **UNDER SEAL**.

3.    To the extent that Oliver's complaint [Record No. 2] alleges claims based upon federal law, those claims are **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B).

4.    Any remaining state claims are **DISMISSED WITHOUT PREJUDICE** to Oliver's right to pursue those claims in a court of appropriate jurisdiction.

5.    This matter is **DISMISSED** and **STRICKEN** from the Court's docket.

-19-

Dated: June 2, 2020.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky